In the Matter of 10-20 GLENWOOD ASSOCIATES, Petitioner, v ASSESSOR OF THE CITY OF BINGHAMTON et al., Respondents.

Supreme Court, Broome County, December 23, 1988

### APPEARANCES OF COUNSEL

*Cronin, Cronin & Harris, P. C. (Laureen C. Harris* of counsel), for petitioner. *Kenneth Auerbach, Corporation Counsel (Robert G. Behnke* of counsel), for respondent.

### OPINION OF THE COURT

ROBERT W. COUTANT, J.

In this tax certiorari proceeding, petitioner is the owner of a parcel of real property in Binghamton, New York, improved by a shopping center known as the Foundry Plaza. Petitioner has moved for partial summary judgment claiming that it is entitled to a tax exemption pursuant to Real Property Tax

Law § 485-b. Respondents maintain that petitioner is not entitled to the exemption until such time as construction on the subject property is completed.

The undisputed facts show that petitioner contracted on or about February 15, 1987 with its wholly owned subsidiary, Boston Associates Construction Company, Inc., to construct the shopping center on the property which is the subject of this action. Construction began in April 1987. A site plan detailing the layout of the plaza was duly submitted to the City of Binghamton. According to petitioner's employee, construction of all buildings was completed by February 1, 1988 except for three structures designated on the site plans as "outbuildings" for "future development." Of the 94,700 square feet of space available in the plaza, one tenant occupied a 50,000-square-foot space by December 1, 1987 and by May 15, 1988 four additional tenants were renting space, resulting in occupancy of 62,400 square feet of the total available space.

On or about April 11, 1988, petitioner applied for a partial exemption from real property taxes pursuant to Real Property Tax Law § 485-b for the taxable year commencing June 1, 1988. In response to that application, the respondent assessor for the City of Binghamton informed petitioner's counsel that the application was denied "as the project is incomplete. According to both the site plan as presented and as is verified by my personal inspection it is in an unfinished status."

In support of its motion for partial summary judgment, petitioner argues that respondent's interpretation of the term "completed" is erroneous. In essence, petitioner maintains that only construction of the "shell" structure, parking lots, etc., need be completed before it is entitled to the exemption. Alterations to the interior to accommodate potential tenants need not be completed, particularly where available space has not yet been rented despite plaintiff's best efforts to do so. Petitioner also argues that areas designated for "future development" need not be constructed, since the project itself is complete and presumably such areas would later be developed as needed.

Respondent assessor argues that because 32,410 square feet of space is not being utilized, he can only complete a partial assessment of the total value of the property. He correctly notes that the exemption found in section 485-b is computed in the first year of exemption and therefore concludes that the exemption can only be calculated after the mall is fully

occupied so that the assessment will be based upon the maximum total value of the property in question.*

The Real Property Tax Law provides in relevant part that

"[r]eal property constructed, altered, installed or improved subsequent to the first day of July, nineteen hundred seventy-six for the purpose of commercial, business or industrial activity shall be exempt from taxation and special ad valorem levies to the extent hereinafter provided." (RPTL 485-b [1].)

"No such exemption shall be granted unless * * *

"such construction, alteration, installation or improvement is completed as may be evidenced by a certificate of occupancy or other appropriate documentation as provided by the owner." (RPTL 485-b [2] [b] [3].)

The legal issue presented by the instant case requires definition of the term "completed" in the context of the statute.

A review of the case law reveals no cases directly dealing with this issue. However, a review of decisions construing the Real Property Tax Law generally and section 485-b specifically, together with the clear intent of the statute, leads to the conclusion that petitioner should have been granted the exemption for 1988.

Turning first to the history and explicit language of section 485-b, it appears the exemption was first made available in 1976 to encourage development of business properties. The original section 485-b provided that the exemption would be available over a 10-year period and was to be recalculated by the assessor each year based upon a stated percentage of the total value of the subject property. (See, Real Property Tax Law § 485-b, prior to 1985.)

In 1985, the statute was amended because the earlier statute had "generated much discussion and some litigation concerning its administration, indicating that revisions to the law [were] in order." (See, mem of Senator Charles D. Cook, re: L 1985, ch 512.) Specifically, under the prior law, "to compute the exemption the assessor [was] required to annually ascertain the increase in assessed value to the entire property as a result of the improvement * * *. This [became] even more difficult should the property owner further improve the prop-

* Respondent's papers do not address the issue of whether areas designated for "future development" must be constructed prior to plaintiff obtaining the exemption. Thus, the court deems the argument to be abandoned.

erty in a subsequent year and request an exemption for the added construction." *(Id.)* Thus, the clear legislative intent in amending RPTL 485-b in 1985 was to alleviate the need to have a given property reassessed on a yearly basis during the duration of the 10-year exemption period.

Nevertheless, the underlying purpose of the exemption was and remains to provide "partial tax exemptions for a 10-year period to encourage the construction and expansion of commercial and industrial facilities in the State". *(Newsday, Inc. v Town of Huntington,* 55 NY2d 272, 275 [1982] [holding that where a locality voted to eliminate the section 485-b tax exemption on school taxes at a point where petitioner had completed 90% of its construction of a new facility, petitioner was entitled to the exemption].) As the Appellate Division noted in another matter, "[t]o allow localities to withdraw exemptions as to projects in which substantial construction has occurred and which have met all requirements for the exemption would undercut this purpose and thwart the investors' reasonable expectations". *(Simon-Equity Jefferson Val. Partnership v Board of Assessors,* 127 AD2d 584, 586.) Thus, the statute has been broadly construed to effectuate its purpose.

Similarly, in *Matter of Pyramid Co. v Tibbets* (139 Misc 2d 132 [1988]), the Supreme Court addressed the question of whether a certificate of occupancy was required before petitioner would be entitled to a section 485-b exemption. Petitioner owned a mall and after construction was admittedly completed, petitioner filed an application for the section 485-b exemptions. The application was denied because plaintiff did not submit a certificate of occupancy and because petitioner had obtained other tax advantages which, respondent argued, precluded granting the section 485-b exemption. On the issue of whether petitioner needed a certificate of occupancy, the court found that such a certificate was not the only form of evidence of completion acceptable under the statute.

"In the present case, the respondents were well aware that the petitioner's project had been completed. Besides the publicity which permeated the town regarding the mall's opening * * * the respondent town's tax assessor * * * visited the mall * * * and personally saw that it was completed. This, coupled with the petitioner's certified application as to the mall's completion, is sufficient evidence to satisfy the requirements of RPTL 485-b (2) (b) (3). (It should also be mentioned that a mall, itself, does not receive a certificate of occupancy.

Such certificates are granted on a store-by-store basis.)" *(Matter of Pyramid Co. v Tibbets, supra,* at 135.)

Thus, the courts have construed various provisions of the RPTL broadly in order to effectuate the underlying purpose of the statute.

As in *Newsday (supra)* and in *Pyramid (supra),* this court concludes in the instant case that respondent assessor's interpretation of the statute is too narrow. As petitioner points out, if "completed" means that the mall must necessarily be entirely rented out so that the assessor can formulate an assessment based upon total occupancy, it is entirely possible for the mall to be in existence for quite some time before that might occur. A potential developer would be faced with the question of whether the property would ever qualify for the exemption, thus defeating the underlying policy of encouraging new construction of commercial facilities by providing a readily available tax exemption when it is most needed.

Instead, this court concludes that "completed" must mean that the structure in question is finished to the extent that it is available for occupancy and meets the specifications contained in the site plans. In the case of buildings designed to be rented out to a variety of tenants, such as the mall in this action, alterations to accommodate specific tenants need not be completed before the property is eligible for the exemption.

Given this interpretation of the term "completed", it is evident that the amount of the exemption could vary on any given property depending upon the percentage of occupancy of the total area. This result, however, was apparently the one contemplated by the Legislature when the statute was amended in 1985. The burden on the assessor of reevaluating on a yearly basis the commercial properties entitled to the exemption was removed by setting a fixed point in time when the total value would be ascertained and the exemption calculated. To a certain degree, a loss may result where, as in the instant case, the value of the property is somewhat diminished by the fact it is not fully occupied at the time the initial appraisal is made. But the owner is not totally left without recourse should substantial improvements or additions be made after the first year. The current section 485-b provides that "in any year in which a change in level of assessment of fifteen percent or more is certified for an assessment roll * * * the exemption shall be recomputed to take into account the increase in assessed value due to the change in level of

assessment". (Real Property Tax Law § 485-b [2] [a].) Thus, while burdensome yearly evaluations are eliminated under the current section 485-b, the property owner is entitled to reevaluation and recomputation of the exemption where the improvements are more substantial.

Based on the foregoing, the petitioner is entitled to summary judgment on the issue of its entitlement to an exemption pursuant to RPTL 485-b. No motion costs are awarded.